**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-23851-BLOOM/Torres**

DR. ROBIN STARKS,

     Plaintiff,

v.

CITY OF MIAMI GARDENS, a
Florida Municipal Corporation, and
AND POLICE CHIEF DELMA-NOEL PRATT

     Defendants.

_____/

<u>**OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS**</u>

**THIS CAUSE** is before the Court upon Defendant City of Miami Gardens' ("Miami Gardens") Motion to Dismiss Amended Complaint and to Strike Plaintiff's Request for Punitive Damages, ("Motion to Dismiss"), ECF No. [29], and Defendant Chief Delma Noel-Pratt's ("Noel-Pratt") Motion to Dismiss the Amended Complaint and Supporting Memorandum of Law, ("Motion to Dismiss"), ECF No. [30]. Plaintiff Dr. Robin Starks, ("Starks"), filed her Combined Response in Opposition to Defendant's Motions to Dismiss, with Incorporated Memo of Law, ("Response"), ECF No. [41]. Both Defendants filed Replies, ECF Nos. [42], and [43]. The Court has reviewed the Motions, the supporting and opposing submissions, the record in the case, and is otherwise fully advised. For the reasons that follow, Defendant Miami Gardens' Motion to Dismiss is granted in part and denied in part, and Defendant Noel-Pratt's Motion to Dismiss is granted in part and denied in part.

I.   **BACKGROUND**

Dr. Robin Starks filed her Complaint against Defendants City of Miami Gardens and the Police Chief Delma Noel-Pratt in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. ECF No. [1-2]. The case was removed to the United States District Court for the Southern District of Florida, ECF No. [1].[1] On December 4, 2023, Starks filed her Amended Complaint, ("Amended Complaint"), ECF No. [25], wherein she alleged the following claims:

> Count I: Violation of Section 112.3187 Florida Statutes (the Florida Whistleblower Act, alternatively, the "Act"), Against Miami Gardens; and
>
> Count II: Retaliation in Violation of the First Amendment Against Miami Gardens and Noel-Pratt.

Starks alleges that Miami Gardens and Noel-Pratt retaliated against her for speech she engaged in both as a private citizen speaking on matters of public importance and in her role as a Police Major with the City of Miami Gardens Police Department. As a Police Major, Starks claims she reported on what she believed to be malfeasance and misfeasance, disclosure of which is protected under the Florida Whistleblower Act, and that her First Amendment rights were violated due to retaliation she suffered after she was vocal about the lack of training within Miami Gardens' police force, and as to Noel-Pratt's "improper conduct" in her role as Police Chief. ECF No. [25] at 2. Starks alleges the First Amendment violations included pressure from Noel-Pratt who Starks alleges had a policy of limiting speech and prohibited her from speaking in public as a private citizen on matters of public concern. *Id*. at 3. Starks brings First Amendment claims pursuant to 42 § U.S.C. §§1983, 1988, the U.S. Constitution, and the Constitution and the laws of the State of Florida. *Id*. Starks also seeks monetary damages in excess of $2,000,000.00. *Id*.

---

[1] The case was initially assigned to the Honorable Judge Joan A. Lenard, ECF No. [2]. Judge Lenard recused herself, and the case was reassigned to the undersigned.

Defendant Miami Gardens moves to dismiss the Amended Complaint, arguing that Starks cannot allege a proper whistleblower claim because she did not participate in protected activity and cannot establish causation. Pertaining to the alleged First Amendment violations, Miami Gardens argues Starks has not established that Miami Gardens had a policy or practice of punishing protected speech, or that Noel-Pratt was a final policymaker necessary for Plaintiff's § 1983 claims. As such, Miami Gardens contends Starks has no valid first amendment claim. ECF No. [29] at 3-17. Noel-Pratt argues that the § 1983 claim brought against her as Police Chief is barred by the defense of qualified immunity, Starks lacks a valid first amendment claim, and her allegations of causation are deficient. *See generally* ECF No. [30]*.

Starks responds that she engaged in protected activity, and her allegations of misfeasance and malfeasance are consistent with the provisions of the Florida Whistleblower Act, Florida Statutes, § 112.3187(5), which should be construed broadly and in her favor. ECF No. [41]. Starks argues Noel-Pratt is not entitled to qualified immunity and remains liable for the adverse actions as alleged. *Id*. at 19. Miami Gardens and Noel-Pratt replied by bolstering the arguments in their respective Motions to Dismiss. ECF No. [42], [43].

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving

party, and all facts alleged by the non-moving party are accepted as true.”); *Ashcroft v. Iqbal*, 556 U.S. 662, 678.

"Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." *Sprint Sols., Inc., v. Fils-Amie,* 44 F. Supp. 3d 1224, 1228 (S.D. Fla. Sept. 12, 2014) (citing *Super. Energy Servs., LLC v. Boconco, Inc.*, No. 09-0321, 2010 WL 1267173, at *5-6 (S.D. Ala. Mar. 26, 2010) and *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. Jan. 7, 1986)).

### B.  Amendment

District courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Federal Rules of Civil Procedure direct that before trial, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely given" absent a showing of "futility of amendment." 466 F.3d at 1270 (citing *Foman*, 371 U.S. at 182). When an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court could determine that leave to amend the complaint is futile. *Cf. Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

## III.  DISCUSSION

### A.  Count I: Florida's Whistleblower Act

Starks alleges in Count I of her Amended Complaint that Miami Gardens violated Florida Statutes § 112.3187 when it terminated her after she disclosed acts of gross management, malfeasance, misfeasance, and gross waste of public funds committed by employees and agents of the Defendant. ECF No. [25] ¶¶ 64, 65.

### i.   Claims Under the Florida Whistleblower Act

Miami Gardens argues Starks cannot establish a *prima facie* claim under the Florida Whistleblower Act because she failed to meet three statutory requirements: (1) § 112.3187(5) the nature of the information disclosed; (2) § 112.3187(6) whom the information was disclosed to; and (3) § 112.3187(7) that she is protected under the Act. ECF No. [29] at 4. Miami Gardens avers Starks did not provide "a written and signed complaint" which is fatal to her claim, and any verbal reporting as alleged cannot overcome this deficiency. *Id*. at 7. Additionally, Miami Gardens maintains the Amended Complaint does not allege that her conduct "disclosed any violation of law, rule, policy or any act of misfeasance, malfeasance [] that would trigger the Act's protections." *Id*. citing *Wheeler v. City of Ft. Lauderdale*, 367 So. 3d 525, 527-25 (Fla. 4th DCA 2023).

Starks responds that she established the elements for a prima facie claim under the Florida Whistleblower Act because: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) some causal connection exists between the two events. ECF No. [41] at 5, citing *Fla. Dep't of Children & Families v. Shapiro*, 68 So. 3d 298, 305-06 (Fla. 4th DCA 2011). Starks also reasons the Act and judicial interpretation of the Act are broad despite the narrow view asserted by Miami Gardens. *Id*. Starks points out that there is no statutory requirement for a "written and signed complaint" as Miami Gardens argues. ECF No. [41] at 8. Instead, Starks reasons that controlling case law has clearly established that employees asked to participate in an investigation or who refuse to engage in adverse actions are protected under § 112.3187(7). *See Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 416 (Fla. 4th DCA 2015). Starks also notes Miami Gardens did not claim her Amended Complaint failed to allege misfeasance, malfeasance, or a gross neglect of duty, effectively conceding that her allegations are sufficient. ECF No. [41] at 8-9.

Miami Gardens replies that Starks affirmatively conceded in her Response that "she did not author a written and signed complaint" to provide a basis for her claim under the Act. ECF No. [42] at 2. However, Miami Gardens did not engage in Starks's Response that her participation in an investigation permits her claim under § 112.3187(7). Conversely, Miami Gardens argues that Starks ignored its argument that she failed to sufficiently identify a law, policy, or rule that was violated or a specific act of misfeasance or malfeasance. *Id*.

The Court finds that Starks' disclosures are protected under the Florida Whistleblower Act. Pertaining to the first element of her *prima facie* case, Starks sufficiently alleged she engaged in statutorily protected activity due to the nature of her disclosures. Section 112.3187(5) provides:

> (5)   NATURE OF INFORMATION DISCLOSED.—The information disclosed under this section must include:
> (a)   Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
> (b)   Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.
> Fla. Stat. § 112.3187(5).

The authorities Miami Gardens relies upon to argue the information Starks disclosed is not protected under the Act are unavailing. In *Wheeler v. City of Ft. Lauderdale*, 367 So. 3d 525 (Fla. 4th DCA 2023), the court held that the "screenshots and spreadsheets" disclosed by the alleged whistleblower failed to identify any violations of law, rule, or policy, or acts of misfeasance or malfeasance. *Id*. at 527-28. In *Wheeler*, the whistleblower suspected his supervisor was working on a second job on the City's time, and proceeded to created call logs, and download documents from the supervisor's computer files. The whistleblower compiled the raw data onto an external drive and presented to a different supervisor. *Id*. at 526. The court found that the screenshots and

spreadsheets did not convey the significance of the underlying raw data, nor demonstrate that any policy was violated. *Id*. The *Wheeler* court also observed that documents on their own merely had the potential to support a disclosure, but "without any written explanation bearing the signature of the complainant" the disclosures were not protected under the Florida Whistleblower Act. *Id*. at 528.

Here, Starks alleges she was assigned to investigate the handling of an automobile crash. During her investigation, Starks determined there was malfeasance: body camera footage showed officers improperly refused to issue citations at the scene of the accident, officers failed to take statements, there was a lack of supervisor assignment, officers in the field were insufficiently trained, there were improper delays in providing public information to the families, etc. ECF No. [25] ¶¶ 14, 15, 19, 22 - 26. Starks' "memorandum on the completed investigation for the accident" was not only written, but it was expressly sought by her superiors at the Police Department. *Id*. ¶ 31. Those allegations support the disclosure of misfeasance for purposes of protection under the Florida Whistleblower Act because she alleged the improper "doing of an act which [] might lawfully be done, and malfeasance for alleging acts which should not have been done at all." *Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 407, n.3 (Fla. 2001) (quoting *Black's Law Dictionary* 1000 (6th ed.1990)). Furthermore, Starks submitted a completed memorandum, far removed from the raw data and screenshots lacking written allegations and context in *Wheeler*.

Defendant's reliance on *Broward Cty. Sheriff's Office v. Hamby*, 300 So. 3d 213 (Fla. 4th DCA 2020) is similarly unavailing. In *Hamby*, the whistleblower referenced an EEOC complaint filed by a colleague without providing any pertinent factual allegations, alleged her corroboration with a co-worker of the "discriminatory, harassing, and hostile work environment" and that she and others were subject to adverse employment actions. *Id*. at 214. However, the court noted that

there were no specific factual allegations in the disclosed information to satisfy § 112.3187(5). *Hamby*, 300 So. 3d at 216-17. The disclosure shortfalls in *Hamby* are simply not present in the instant case. Starks alleged specific violations of policy and specific instances of misfeasance in her memorandum which Miami Gardens does not attack directly. It merely faults Starks for "findings" and the "conduction" of the investigation. Miami Gardens does not address that on June 27, 2023, Starks advised her superiors that all documents relating to her "her memorandum on the completed investigation . . . were submitted . . . consisting of copies of all accident reports, including the redacted copies, complete copies, and the videos for the [body worn cameras]." ECF No. 25 ¶ 31. Starks' Amended Complaint does not rely on allegations of generalized "findings" or "verbal reports" and *Wheeler* and *Hamby* are wholly inapposite. Accordingly, Miami Gardens fails to demonstrate that the Complaint lacks specific factual allegations for disclosed information required in § 112.3187(5), and dismissal is not warranted on this basis.

Next, Miami Gardens' argument that Starks cannot seek protection under the Act as her disclosure was not made to a "chief executive officer as defined in 447.203(9) or other appropriate local official" also fails. The case law Miami Gardens offers is not persuasive. In *Cummins v. Lake County Bd. of City Comm.*, 671 So. 2d 893 (Fla. 5th DCA 1996), the court simply affirmed the lower court's finding that the "personnel to whom appellant expressed his concerns are not within the scope of persons disclosure to whom is protected by section 112.3187(6)." That decision was affirmed without indicating who the information was disclosed to or why it was insufficient.

Miami Gardens' reliance on *Schultz v. Sch. Bd. of Miami-Dade Cty.*, No. 00-3496-CIV, 2002 WL 34492868 (S.D. Fla. Sept. 20, 2003) fares no better. In *Schultz*, the district court held that a teacher who provided a "list of concerns" to a schoolboard member "who in turn forwarded the information to [the] superintendent" failed to properly disclose the information to an official

herself as required by § 112.3187(6). *Id.* at *10. Here, in contrast, the information was specific and, based upon an investigation, and as alleged, provided to the appropriate local official.

Miami Gardens has therefore failed to satisfy its burden of establishing it is entitled to dismissal. *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. Apr. 1, 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") (internal quotations and citation omitted); *see also Super. Energy Servs., LLC v. Boconco, Inc.*, No. 09-0321, 2010 WL 1267173, at *5-6 (S.D. Ala. Mar. 26, 2010). Accordingly, dismissal with respect to any purported failure under § 112.3187(6) is not warranted.

Finally, Miami Gardens argued at length that Starks could not seek protection under the Florida Whistleblower Act as she did not provide a signed and written complaint pursuant to § 112.3187(7). Starks rebuts this argument, citing to *Rustowicz v. N. Broward Hospital Dist.*, 174 So.3d 414 (Fla. 4th DCA 2015) which held "[t]he language of section 112.3187(7) makes it clear that the legislature intended whistleblower protection to be extended to employees other than those who sign a written complaint. The statute specifically extends protection to employees 'who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity' [and] employees 'who refuse to participate in any adverse action prohibited by this section'" *Id.* at 421 (citing Fla. Stat. § 112.3187(7)). A plain reading of the statute makes clear that a person may seek protection under the Act if that person is asked to participate in an investigation, as Starks alleges. Starks also alleges she refused to participate in adverse actions, providing specific factual allegations in her Amended Complaint. *See* ECF No. 25 ¶¶ 33-36. Miami Gardens did not engage with this argument. *See Melford v. Kahane & Assocs.*,

371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. Apr. 1, 2019). Accordingly, the Court finds that Starks satisfies the requirement set forth in § 112.3187(7).

### ii. Causation Under the Florida Whistleblower Act

Miami Gardens argues that even if Starks could establish a *prima facie* case under the Act, Starks cannot establish the necessary but-for causal connection between her claimed activity and her termination. ECF No. [29] at 8. Instead, Miami Gardens argues Starks' Amended Complaint lacks basic factual allegations such as who terminated her employment, who she made disclosures to, or even how she made the alleged disclosures, and she wholly failed to identify any decision-maker. *Id*. For these reasons, Miami Gardens argues dismissal of Starks' claim under the Florida Whistleblower Act is warranted. *Id*.

Starks responds that the Amended Complaint provided allegations in "abundant detail" linking her protected disclosures with her conduct, and her termination. ECF No. [41] at 9. Starks argues she sufficiently alleged that her employment was terminated one day after she completed her investigation, and her refusal to participate in improper adverse actions is enough to satisfy the pleading standard at this stage. *Id*. at 10. Finally, Starks cites to *Rustowicz* for support that the necessary causal link to establish a *prima facie* claim under the Act merely requires proving "that the protected activity and the negative employment action are not completely unrelated." 174 So. 3d at 416 (quotations omitted).

Miami Gardens replies that Starks applied the wrong causation standard for Florida Whistleblower Act claims. ECF No. [42] at 3. Miami Gardens reasons the "not completely unrelated" causation standard from *Rustowicz* no longer applies, and that later case law establishes the correct causation standard for a *prima facie* case under the Act is the but-for standard. *See Palm Beach Cty. Sch. Bd. v. Wright*, 217 So. 3d 163 (Fla. 4th DCA 2017) and *Chaudry v. Adventist Healthy Sys. Sunbelt, Inc*. 305 So. 3d 809, 817 (Fla. 5th DCA 2020). Here, Miami Gardens argues

Starks failed to allege a but-for causal link between her protected activity and her termination, which warrants dismissal of Count I. ECF No. [42] at 4.

The Court agrees with Miami Gardens as to the correct causal standard; under the Florida Whistleblower Act, a plaintiff must show that but-for the disclosure, the adverse employment action would not have occurred. The "Eleventh Circuit ha[s] recognized that due to similarities between statutes, retaliation claims under Whistle Blower's Act are analyzed using same framework as Title VII retaliation claims." *Chaudry* 305 So. 3d at 814 (quoting *Aery v. Wallace Lincoln-Mercury*, *LLC,* 118 So. 3d 904, 913 (Fla. 4th DCA 2013).; *see Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). Thus, it is the burden-shifting framework that applies to the element of causation when establishing retaliation under both the Florida public and private Whistleblower Acts. *Chaudry* 305 So. 3d at 814 (citing *Griffin v. Deloach*, 259 So. 3d 929, 931 (Fla. 5th DCA 2018)); *see Id*. n.1.

Accordingly, a plaintiff must first establish a *prima facie* claim for retaliation under the Florida Whistleblower Act by showing she (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal connection exists between the two events. *Chaudry* 305 So. 3d at 814 (citing *Griffin v. Deloach*, 259 So. 3d 929, 931-32 (Fla. 5th DCA 2018)). From there, the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is applied. *Id*. (citing *Griffin v. Deloach*, 259 So. 3d 929, 931 (Fla. 5th DCA 2018)). As explained in *Sierminski,* "[o]nce plaintiff establishes a *prima facie* case by proving only that the protected activity and the negative employment action are not completely unrelated, the burden shifts to the defendant to proffer a legitimate reason for the adverse action." *Sierminski*, 216 F.3d at 950; *see, e.g., Olmsted v. Taco Bell*, 141 F.3d 1457, 1460 (11th Cir.1998). At that point, the

"burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the 'legitimate' reason is merely pretext for prohibited, retaliatory conduct." *Id.*

Here, Starks alleged that her superiors were advised on June 27, 2023 that her investigation was completed, and all supporting documents were turned in. ECF No. [25] ¶ 31. Starks alleges she was terminated the following day, June 28, 2023, despite an otherwise positive thirty-three years of service on the police force. *Id.* ¶ 20, 32. The Court finds Starks sufficiently alleged causation as these are not unrelated events, nor has Miami Gardens put forth any argument to indicate otherwise. *See Sierminski*, 216 F.3d at 950 (a "plaintiff establishes a prima facie case by proving only that the protected activity and the negative employment action are not completely unrelated.).

It is at this stage that the burden shifts to Miami Gardens to proffer a legitimate, non-retaliatory reason for the adverse employment action, Starks' termination. Miami Gardens has failed to do so. Accordingly, dismissal is not warranted and Miami Gardens' Motion to Dismiss with respect to Count I is denied.

## B. Count II: Retaliation in Violation of the First Amendment

### a. Starks' Speech as a Private Person Speaking on Matters of Public Importance and as a Government Employee

Starks alleges that she exercised her right to free speech as a citizen commenting on matters of public concern, which "outweighed any interest of the City and Noel-Pratt in the effective and efficient fulfilment of any municipal responsibility." ECF No. [25] at 2. Starks asserts this speech "played a substantial part" in the adverse employment actions against her. *Id.* Starks also alleges that Noel-Pratt forbade her from "attending any political, public, or community events" as a citizen within the city Starks lived. *Id.* ¶ 43. Count II is brought against both Miami Gardens and Noel-Pratt.

Miami Gardens argues Starks failed to delineate the actual speech she engaged in to sufficiently analyze whether it was protected and for what reasons. ECF No. [29] at 15. Miami Gardens contends any speech pertaining to police deficiencies did not establish that her speech as a citizen commenting on matters of public concern outweighed its interest as a municipality in effective management of its police department. *Id*. at 15-16. Miami Gardens contends the speech Starks engaged in as an officer — her memorandum and participation in departmental meetings — is not insulated from employer discipline, citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Further, Miami Gardens reasons a police department is "a quasi-military entity different from other public employers" warranting a higher degree of control over the "words and actions" of its employees to serve the community efficiently. *Id*. at 16; citing *Hansen v. Soldenwagner*, 19 F.3d 57 (11th Cir. 1994). Miami Gardens also claims Starks failed to establish a causal connection between her speech and her termination, providing an additional reason for dismissal. *Id*. at 17.[2]

Starks responds that she sufficiently alleges that she engaged in protected speech as a citizen. ECF No. [41] at 16. Starks argues she alleges she was prevented from exercising her First Amendment freedom of speech in her community as a private citizen. *Id*. at 15. Next, Starks contends that she reported on malfeasance and misfeasance of the police department and commented on a lack of training both internally and at "forums" as an engaged community member. *Id*. at 17; *see* ECF No. [25] ¶ 47. Finally, Starks reasons she properly stated a claim for retaliation by alleging subjective motivation and "plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct" sufficient for the pleading stage. *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011); *Ariz. Students' Ass'n v. Ariz. Bd. Of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

---

[2] Noel-Pratt's Motion to Dismiss pertaining to these claims is effectively identical to Miami Gardens' arguments. *See generally* ECF No. [30] at 4-9.

Miami Gardens replies that Starks' speech on training and new police recruits was made in connection with her role as a Police Major, not as a private citizen, and is therefore unprotected under the First Amendment. ECF No. [42] at 5. Regarding the alleged speech made as a private citizen on matters of public importance, Miami Gardens argues Starks attempted to cure the deficiencies in her Amended Complaint by asserting she voiced these concerns as a citizen at "public forums and a community center" through her Response. *Id.* at 5-6. However, Miami Gardens reasons Starks cannot amend her complaint through briefings to the Court. *Id.* at 5-6. Additionally, Miami Gardens faults Starks for failing to address its argument for dismissal based upon the balancing test set forth in *Pickering v. Board of Ed.*, 391 U.S. (1968). *Id.* at 6. For these reasons, Miami Gardens maintains dismissal of Count II is warranted.[3] *Id.*

### i.   Starks' Protected Speech as a Private Citizen

Starks alleges she was retaliated against by the Miami Gardens and Noel-Pratt "for expressing her opinions." ECF No. [25] at 3. Pertaining to Noel-Pratt, Starks alleges she was "banned from speaking to public officials and attending public meetings in her capacity as a citizen." *Id.* Starks points to several paragraphs in her Amended Complaint to establish that she sufficiently alleged that she spoke out as a citizen on a matter of public concern. However, Starks fails to allege any statements made, or in what public setting her opinion was expressed. At best, Starks alleges she was prevented from speaking in public when Noel-Pratt advised Starks certain councilmembers did not want Starks attending public events, and that Noel-Pratt prohibited Starks from "making any comments about the Chief in any capacity. . . about the lack of training, and related issues." *Id.* ¶¶ 45(g), 52. Starks realleges that she was prevented from exercising her First Amendment rights, and that underlying violation was achieved "by retaliating against her for her

---

[3] Noel-Pratt's Reply pertaining to points is effectively identical to Miami Gardens.' *See generally* ECF No. [43] at 2-3.

lawful exercise of her First Amendment rights." *Id*. ¶¶ 85, 86. Therefore, Starks has failed to provide any facts related to actual speech made as a private citizen on matters of public concern. Instead, Starks provided allegations that she experienced retaliation in the form of employer pressure which prevented her from speech. However, that is not enough to establish that she spoke as a citizen on matters of public concern, or what the speech was to permit an analysis as to whether that speech was protected.

Starks cites to *Vila v. Padron*, 484 F.3d 1334 (11th Cir. 2007) for support of her First Amendment claim, but her argument is still unavailing. In *Vila*, the Eleventh Circuit upheld the district court's dismissal of a First Amendment retaliation complaint, noting a "court must examine the statements at issue and the circumstances under which they are made to determine whether or not there is First Amendment protection." *Id*. at 1339 (citing *Morales v. Stierheim*, 848 F.2d 1145, 1148 (11th Cir.1988)). It is only when the "'content, form, and context of a given statement'" is analyzed can a determination be made whether First Amendment protections are warranted. *Id*. (citing *Connick v. Meyers*, 461 U.S. 138, 147 (1983)). In *Vila*, specific details were provided as to what speech the plaintiff engaged in, and under what context. *Id*. Similarly in *Pickering v. Board of Ed. of Township High School*, 391 U.S. 563 (1968), the Court analyzed in detail the statements contained in the letter written by the appellant. Whether First Amendment protections existed was based upon an analysis of specific statements.

Here, Starks has not provided any actual statements that she made in a public setting for this Court to analyze. Not only is this insufficient based on prevailing case law, the Amended Complaint with respect to this issue does not satisfy the basic pleading standards set forth in Rule 8(a)(2) requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Starks attempted to provide more detail in her Response, but as

Miami Gardens correctly points out, Starks cannot amend her Complaint in her briefings. *See Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Consequently, Starks cannot seek protection for statements made as a private citizen about a matter of public concern given the absence of any related statements alleged in her Amended Complaint.

However, Starks has sought leave to amend her Complaint. Therefore, with respect to her speech as a private citizen, the Court addresses the argument that Miami Gardens' and Noel-Pratt's "need to secure its police department's discipline, respect, trust, and reputation (and its overall operations) outweighed any purported free speech rights claimed by Plaintiff here." ECF No. [29] at 19. Although Starks failed to provide specific statements, Miami Gardens has not shown that any speech related to "concerns about training" are categorically barred. Moreover, the cases Miami Gardens relies on to establish that a police department necessarily warrants a degree of control over employee speech higher than the already heightened level for a public employer are inapposite. *See e.g. Hansen v. Soldenwagner*, 19 F.3d 573 (11th Cir 1994) ("[h]ere, the outcome of a *Pickering* balance is especially uncertain because the manner of Hansen's speech was vulgar, insulting, and defiant."); *Green v. Finkelstein*, 2021 WL 4749686, at *10 (S.D. Fla. Oct. 12, 2021) ("The First Amendment does not require a public employer to tolerate an embarrassing, vulgar, vituperative, ad hominem attack, simply because the employee recently has waved a political sign, or was waiving the sign while conducting the attack." (quoting *Morris v. Crow*, 117 F.3d 449, 458 (11th Cir. 1997)). There are no allegations of vulgarity, defiance, or ad hominem attacks. Instead, the cases relied upon indicate a balancing test remains warranted, consistent with *Pickering v.*

*Board of Ed. of Township High School*, 391 U.S. 563 (1968) for a police department, or any other quasi-military entity.

Accordingly, the Motions to Dismiss filed by Miami Gardens and Noel-Pratt with respect to Starks' claim of retaliation for her speech made as a private citizen in Count II of her Amended Complaint are granted without prejudice, and with leave to amend.

### ii.  Starks' Speech in Her Official Capacity

Starks' Amended Complaint directly links her termination as Police Major with the issuance of her report on the investigation wherein she alleges to have revealed misfeasance and malfeasance within the police department. ECF No. [25] ¶¶ 31, 32. She also alleges that she verbally reported on the issues from her investigation in her role as Police Major. *Id*. ¶ 23.  Neither party has disputed that this speech was conducted within her official capacity as a Police Major. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court of the United States clarified that two inquiries must be made when analyzing "the constitutional protections accorded to public employee speech." *Id*. at 418. The Court in *Garcetti* noted the first inquiry is whether the employee spoke "as a citizen on a matter of public concern." *Id*. (citing *Pickering*, 563 U.S. at 568). As *Garcetti* made clear, "[i]f the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id*. The Court explained that the government in its capacity as an employer "has far broader powers than does the government as sovereign." *Id*. (citing *Waters v. Churchill*, 511 U.S. 661, 671 (1994)). In *Garcetti*, the Court held "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 421.

Starks' case is analogous to *Garcetti*. In *Garcetti*, a deputy district attorney determined an affidavit used to secure a search warrant "contained serious misrepresentations," and conveyed his

findings through a disposition memo, followed by a "heated" meeting. *Id*. at 414. Eventually, Garcetti was subjected to retaliatory employment actions — reassignment, transfer, and denial of a promotion. *Id*. at 415. The Court found Garcetti had no constitutional cause of action against his employer, rejecting "the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties." *Id*. at 426. At the same time, the Court noted that exposing governmental misconduct is "of considerable importance" and the "powerful network of legislative enactments — such as whistle-blower protection laws" are available to protect those who expose wrongdoing. *Id*. at 425.

Here, like Garcetti, Starks was involved in an investigation in her capacity as a public employee and alleges she was specifically assigned "the investigation into whether malfeasance and improper conduct was engaged in" and that she had a thirty-three-year history of conducting investigations. ECF No. [25] ¶¶ 20, 22. Therefore, in her role as a Police Major, the work was done in the course of Starks performing her job as a public employee.

Consequently, the First Amendment does not create a constitutional cause of action for any alleged adverse employment action that occurred because of Starks' investigation. Starks' related claim under Count II of her Amended Complaint against the City of Miami Gardens for retaliation in violation of her First Amendment rights based upon her speech and statements made in her capacity as a public employee fails. Accordingly, the Motions to Dismiss filed by Miami Gardens and Noel-Pratt with respect to this issue is granted with prejudice.

### C. Liability Pursuant to 42 U.S.C. § 1983

### i. Miami Gardens 42 U.S.C. § 1983 Practice or Policy

Miami Gardens moves to dismiss Count II arguing Starks failed to proffer any facts that could establish Miami Gardens had a policy, practice, or custom which served as a "moving force" in her termination. ECF No. [29] at 10. Miami Gardens faults Starks for failing to cite a single

similar incident to her termination. *Id*. Instead, Miami Gardens argues Starks' allegations indicate that her termination is an isolated incident, insufficient to establish a custom or policy existed for liability under § 1983. *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Owaki v. City of Miami*, 491 F. Supp. 2d 1140, 1158 (S.D. Fla. June 21, 2007).

Starks' response does not address § 1983 liability as it pertains to Miami Gardens. Her Response briefly cites to *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), then addresses liability pertaining to Noel-Pratt, addressed below. ECF No. [41] at 11-20. Starks withdrew her damages claim against Miami Gardens, seeking leave to replead once discovery is completed. *Id*. at 21.

Miami Gardens replies that Starks did not respond to its argument that she failed to allege a custom or policy to establish liability under 42 U.S.C. § 1983, thus conceding she has no claim and Count II should be dismissed. ECF No. [42] at 4.

This Court has already determined that consistent with *Garcetti v. Ceballos*, 547 U.S. 410 (2006), Starks does not have a constitutional cause of action for the speech she engaged in as an employee of the police department, including the investigation report she completed in June 2023. Starks' speech as a public employee made pursuant to her official duties as a Police Major was not the speech of a citizen for First Amendment purposes and does not protect her from employer discipline. *Garcetti*, 547 at 421.

A more recent Supreme Court decision, *Lane v. Franks*, 573 U.S. 228 (2014), clarified that it is not only whether the disclosures relate to or concern the public employment, but when the speech is "ordinarily within the scope of an employee's duties" that the speech is unprotected for purposes of the First Amendment. *Id*. at 241. In *Lane*, the Supreme Court held sworn testimony within a judicial proceeding pertaining to corruption and misuses of state funds is protected speech

as a citizen, not as a public employee, as it was "far removed" from the internal memo in *Garcetti*. *Id*. at 239. The Court in *Lane* noted "when the employee went to work and performed the tasks he was to perform, he acted as a government employee." *Id*. (cleaned up). Here, Starks alleges she has a "thirty-year history of conducting investigations" and that the Police Chief directed that "virtually every high-level Police Department official have some form of involvement in the investigation." ECF No. [25] ¶¶ 20, 21. Consequently, this is squarely within the *Garcetti* framework of unprotected speech of a public employee acting within the scope of her normal duties, not speech as a citizen on a matter of public concern. *Id*. at 241. Accordingly, Starks cannot claim deprivation of her First Amendment rights "secured by the Constitution and laws" under 42 § U.S.C. § 1983, for the statements she made as an employee in the course of doing her job. *Garcetti*, 547 U.S. at 426. Therefore, Miami Gardens does not need to establish a defense as no constitutional deprivation occurred with respect to those statements.

### ii. Noel-Pratt's 42 U.S.C. § 1983 Arguments: Final Policy Maker and Qualified Immunity

#### a. Final Policy Maker Argument

Miami Gardens also argues Starks fails to set forth a § 1983 claim under the theory that Noel-Pratt had final policy-making authority. ECF No. [29] at 11. Miami Gardens contends the allegations in Starks' Amended Complaint are insufficient to establish liability in under *Monell v. Dep't. of Soc. Servs., etc.*, 436 U.S. 658 (1978). Further, Miami Gardens points out the Amended Complaint failed to cite an ordinance or statute to support her allegation because none exists. ECF No. [29] at 11. Additionally, Miami Gardens argues a defendant can only be a final policy maker if (1) as a matter of state law the official is has that responsibility, and (2) whether that authority is final and unreviewable. *See City of St. Lous v. Praprotnick*, 485 U.S. 112, 124-27 (1988); *see*

Case No. 23-cv-23851-BLOOM/Torres

*also Darlow v. City of Coral Springs*, No. 21-CIV-60083-RAR, 2022 WL 110698, at \*4 (S.D. Fla. Jan 12, 2022).

Starks responds that she pled sufficient factual allegations that Noel-Pratt was the final decision-maker for Miami Gardens at the motion to dismiss stage, and her Complaint must be viewed in the light most favorable to her as non-movant. ECF No. [41] at 14. Substantively, Starks cites to *Mandel v Doe*, 888 F.2d 783 (11th Cir. 1983) for support that whether a person has final policy making authority requires examination not only of law but "the relevant customs and practices having the force of law." *Id*. at 793. Starks argues a policy existed because a decision adopted by the municipality "by an official of such rank" that it could be said the person is "acting on behalf of the municipality." *See Cuesta v. Sch. Bd.  Of Miami-Dade Cty.*, 285 F. 3d 962, 966, 968 (11th Cir. 2002); *see also Sewell v. Town of Lake Hamilton*, 117 F. 3d 488, 489 (11th Cir. 1997). Finally, Starks reasons whether a municipality delegates authority to a decision maker "is a question of fact for the trial judge" citing to *Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir. 1983). For those reasons, Starks contends she can withstand dismissal with respect to her § 1983 retaliation claim against Noel-Pratt as a final decision maker. ECF No. [41] at 12-13.

Miami-Gardens replies, noting it provided "numerous controlling, in-circuit legal authorities on the final policy maker authority theory of liability" with which Starks wholly failed to engage. ECF No. [42] at 5. It argues Starks' Amended Complaint lacks any factual allegations to establish a *Monell* theory of liability, and Starks' § 1983 claim should be dismissed. *Id*.

The Court finds that Starks' allegation that Noel-Pratt had final decision-making authority with respect to her termination is sufficient. It appears, consistent with *Berdin,* that Noel-Pratt was "clothed with the authority to actually make the firing decision." 701 F.2d at 914. In *Berdin*, the Eleventh Circuit upheld the district court's finding that a mayor had final decision-making

21

authority to the fire personnel despite the record showing that the mayor did *not* actually have such final authority because he was answerable to the City Commission. *Id*. The evidence established that the authority was effectively granted because when the mayor fired the plaintiff, a municipal worker, he was indeed fired. *Id*. Here, neither Noel-Pratt nor Miami Gardens denies that Noel-Pratt fired Starks, nor claims that Noel-Pratt is answerable to anyone regarding the decision to fire Starks. This is consistent with the later Eleventh Circuit decision in *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir.1997). In *Scala*, an employee of the city's fire department was terminated, and that termination was upheld upon a finding that the persons who fired Scala were not final policymakers. *Id*. at 1403. However, in *Scala*, the court noted that the local Civil Service Board had the power to reverse any termination decision made by the defendants, the city also had "governing documents [to] provide employees with an opportunity for meaningful administrative review of termination decisions at the fire department." *Id*. at 1402. Further, that plaintiff had already reviewed a prior demotion in front of the Board, which the Board reversed. *Id*. Here, there is no information that Starks' termination was reviewable, Starks alleges that she was fired, and like *Berdin*, that termination had force. Miami Gardens and Noel-Pratt do not indicate that the termination was reviewed or reviewable by any entity or person.

In *AHE Realty Assoc., LLC v. Miami-Dade Cty.*, 320 F. Supp. 3d 1322 (S.D. Fla. June 29, 2018), the plaintiff alleged that a local building official as a matter of an "informal policy" was in fact the final policy maker. The court determined the allegation was conclusory and belied in part because of "the existence of the Unsafe Structures Board, which reviews decisions such as the one at issue." *Id*. at 1339. Here, Starks did not allege there was an informal policy, she alleged the action was taken by Noel-Pratt against her, the termination occurred, and there is no indication the decision was reviewed or reviewable as in *Scala* or *AHE*. Accordingly, Starks has sufficiently

alleged that Noel-Pratt was a final decision maker for purposes of § 1983 liability. Miami Gardens'

Motion to Dismiss with respect to this issue is denied.

### b. Qualified Immunity

Noel-Pratt moves for dismissal of Count II, retaliation in violation of the First Amendment

to the United States Constitution, asserting qualified immunity bars the claim against her. ECF No.

[30] at 4. Noel-Pratt argues nothing in the Amended Complaint established that she "knowingly

violated any purported constitutional right or acted incompetently in connection" with Starks'

employment. *Id*. Instead Noel-Pratt maintains she "legitimately acted in accord with her job-

related duties" and is entitled to qualified immunity barring the 42 U.S.C. § 1983 claim against

her. *Id*. Both Miami Gardens and Noel-Pratt assert Starks has no viable First Amendment claim to

which Starks can attach § 1983 liability to, an additional reason both Defendants contend Count II

should be dismissed.

Starks responds qualified immunity does not protect Noel-Pratt because First Amendment

rights under the United States Constitution were "clearly established" at the time of the alleged

conduct.  ECF No. [41] at 19, citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Starks also

argues that the "right to be free from retaliation is clearly established as a first amendment right"

at the time of the alleged conduct and can be brought under § 1983. ECF No. [41] at 20 (citing

*Ratliff v. DeKalb Cty*., 62 F.3d 338, 341 (11th Cir. 1995)). Therefore, Starks contends qualified

immunity as alleged by Noel-Pratt is inapplicable and does not bar her § 1983 claim for retaliation.

Noel-Pratt replies that Starks failed to rebut her qualified immunity argument. ECF No.

[43] at 1. Instead, Noel-Pratt contends the allegations in the Amended Complaint support that as

Police Chief, she performed her legitimate job-related duties in the course and scope of her

employment, did not act incompetently nor knowingly violate any of Starks' constitutional rights.

*Id*. at 2

The Court finds that the law was clearly established at the time of the events alleged in the Amended Complaint that when a "[public] employee speaks as a citizen on a matter of public concern . . . the possibility of a First Amendment claim arises." *Garcetti*, 547 U.S. at 418. *See Pickering v. Board of Ed. of Township High School*, 391 U.S. 563, 569 (1968) ("The problem in any case is to arrive at the balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."). Here, Noel-Pratt does not argue that the private speech of a public employee cannot obtain First Amendment protections, nor do the cases she relied upon support that argument. *See Leslie v. Hancock Cty. Bd. of Ed.*, 720 F.3d 1338, 1345 (11th Cir. 2013) (holding it was not clearly established "whether the *Pickering* balance of interests favors the government employer when an employee who serves in a policymaking or confidential role can be dismissed based on political affiliation or belief."). There is no argument that Starks had a policymaking or confidential role. Noel-Pratt's reliance on *Wilson v. Layne*, 526 U.S. 603 (1999) is also unavailing. In *Wilson*, the Court determined officers who brought a news reporter and photographer during the execution of an arrest warrant were entitled to qualified immunity because the state of the law was not clearly established at the time of the search. *Id.* at 606. Both the Supreme Court of the United States and the common-law tradition had long approved the presence of third parties during search warrants for the purpose of identifying stolen property. However, the Court observed that the state of the law was at best undeveloped, citing to ride-along policies from the United States Marshals' office that did not directly address this issue. Moreover, local policies did not expressly prohibit reporters and photographers from attending the execution of an arrest warranted, thus finding that qualified immunity was warranted. *Id.* at 611-12, 617.

Here, *Pickering* and *Garcetti* represent well-established law relied upon by both Defendants in their Motions to Dismiss. While Starks' Amended Complaint pertaining to her speech as a private citizen is due to be dismissed with leave to amend based on the insufficiency of her allegations, Noel-Pratt has not been able to demonstrate she is entitled to qualified immunity for any content of speech Starks may have engaged in as a private citizen on a matter of public concern. An analysis under *Pickering* is required to determine whether any such speech or statements warrants First Amendment protections; the Court currently cannot make a determination based on the insufficient pleadings, and Starks has been granted leave to amend her Complaint. Consequently, Noel-Pratt is not entitled to the defense of qualified immunity with respect to any speech Starks made as a private citizen as there is no finding that a constitutional violation occurred.

### D.  Motion to Amend and Futility Analysis

When an amended complaint would still be "properly dismissed" a district court can determine that leave to amend the complaint is futile. *Cf. Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). With respect to the deficiencies noted in Starks' claim under Count II, that she experienced retaliation for her speech as a private citizen on a matter of public importance, the Court notes the deficiencies are not fatal, nor is there indication an amended complaint would still be "properly dismissed." Therefore, consistent with her request in her Response, Starks may file an Amended Complaint. *See* ECF No. [41] at 21.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant Miami Gardens' Motion to Dismiss, **ECF No. [29]**, is **GRANTED IN**

**PART AND DENIED IN PART**. Count I shall proceed against Defendant, Miami Gardens. Count II is dismissed without prejudice with respect to Starks' private speech on matters of public concern claim and is dismissed with prejudice with respect to Starks' speech made pursuant to duties as a public employee claim.

2. Defendant Noel-Pratt's Motion to dismiss, **ECF No. [30]**, is **GRANTED IN PART AND DENIED IN PART.**

3. Plaintiff shall file an Amended Complaint consistent with this Order on or before June 7, 2024.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 24, 2024.

 

 

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record